UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
**FILED**
FEB 0 6 2020
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

V.

INDICTMENT NO. 5:20-CR-23-KKC
18 U.S.C. § 1014 & 18 U.S.C. § 2

**KAREN ANN NICKELL,**
    aka KAREN LANE,
    aka KAREN MCNEW

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1. **KAREN ANN NICKELL, aka KAREN LANE, aka KAREN MCNEW**, was an independent insurance adjuster, who adjusted for AgriLogic Insurance Services and for ARMtech Insurance Services, from at least 2011 until April of 2015, at which time she became a licensed insurance agent, selling insurance for ARMtech Insurance Services.

2. As an insurance adjuster, **NICKELL** adjusted crop claims of damage in and around the state of Kentucky, including Nicholas and Bourbon Counties, in the Eastern District of Kentucky.

## STATUTORY AND REGULATORY BACKGROUND

3. In 1938, Congress passed the Federal Crop Insurance Act ("Act"), 7 U.S.C. § 1501 *et seq.*, in order to promote the economic stability of agriculture in the United States through, in part, a system of crop insurance.

4. In furtherance of this purpose, Congress established the Federal Crop Insurance Corporation ("FCIC"), which was authorized to insure crop losses due to drought, flood, or other natural disaster, as determined by the Secretary of the USDA. 7 U.S.C. § 1503 and 1508. Tobacco, wheat, corn, and soybeans were among the crops for which insurance was authorized under the Act. 7 U.S.C. § 1518.

5. The Act only authorized the extension of insurance coverage to producers, that is, a person or entity with a bona fide insurable interest in a crop as either an owner-operator, landlord, tenant, or sharecropper. 7 U.S.C. § 1520. Farmers are producers. A crop insurance policy under the Act provided payments to a farmer when bad weather (freeze, drought, etc.) or other such naturally occurring events caused the harvest for the farm to be less than the amount specified in the insurance contract or written policy agreement, also known as the "guarantee." These federally-backed crop insurance policies are referred to as multi-peril crop insurance ("MPCI") policies.

6. Farmers who opt to insure their crop are required to take out insurance policies prior to the growing season. Farmers generally do not pay their policy premiums until the growing season has ended and when the farmer knows whether or not his or her yield (i.e., the amount of crop harvested from a specific farm) justified an insurance claim. If the farmer makes a claim under his or her crop insurance policy, then the insurance premium is typically deducted from the amount paid out to the farmer under the policy.

7. Under the crop insurance program, eligible farmers are paid benefits based, in part, on factual representations as to the ownership of the crop, amount of crop harvested and sold, and the cause of loss.

8. The insurance coverage, also called the guarantee, and premiums of coverage are based on four or more years of production records for a particular crop grown by a farmer on a specific farm designated by its unique Farm Serial Number ("FSN"). This means that the farmer's actual production history ("APH") determines the insurance policy's guarantee, based on how much of that crop the farmer has produced on that FSN during each of the four years immediately preceding the year for which insurance is sought. 7 U.S.C. § 1508. If a farmer has produced that crop for more than four years, the guarantee will be based upon that farmer's production history of those preceding years, but no more than ten years of production history will be used. 7 U.S.C. § 1508. A new producer is a person who has not actively engaged in farming of the crop sought to be insured in the county for more than two years. 7 C.F.R. § 400.52. New producers are given an estimated production yield based upon the county average production for the crop for the past 4 years. See 7 C.F.R. §§ 400.52(m), 400.52(p) and 400.55(b)(6).

9. The Risk Management Agency ("RMA") is an agency of the USDA that supervises the FCIC and administers all programs authorized under the Act. 7 U.S.C. § 6933. Most crop insurance is sold by approved private insurance companies, called Approved Insurance Providers ("AIPs"), through an insurance agent working on behalf of the AIP. AIPs are reinsured by the FCIC/RMA under provisions established in a Standard Reinsurance Agreement ("SRA"), a contract between the AIPs and RMA. The FCIC/RMA also pays, or subsidizes, a portion of the premium paid by the farmer.

10. Under current regulations, RMA neither pays nor insures farmers directly. Instead, the private reinsurance companies sell and service the individual crop policies

though their local insurance agents. Private insurance agents and loss adjusters work as contract middlemen between the private reinsurance companies and the farmers. The insurance agents sell the policies to farmers and provide the local servicing (i.e., selling policies, collecting premiums, gathering necessary information about crops and acreage, etc.). AIPs compensate insurance agents with whom they contract with commissions. Loss adjusters are responsible for making farm visits to collect and verify the claim information submitted by the farmer. They accomplish this by, among other things, measuring acreage, conducting appraisals, determining the cause of loss, and/or collecting and verifying crop production records. Loss adjusters, as independent contractors or employees of the AIP, are required to follow RMA procedure when conducting loss adjustment activities.

11. When a loss is paid on a crop insurance policy, the loss is calculated by the AIP and paid to the producer, often through the agent. Pursuant to the SRA, the AIP is reimbursed by the FCIC/RMA.

12. **NICKELL** adjusted the MPCI policy for E.L.P. in Crop Year 2011 covering Farm Number 4489, identified as "1a" and "1b", located in Bourbon County, Kentucky.

13. Paragraphs 1 through 12 above are re-alleged and incorporated herein by reference.

14. Between January 12, 2012 and February 2, 2012, in Bourbon County, located within the Eastern District of Kentucky, and elsewhere,

**KAREN ANN NICKELL,**
**aka KAREN LANE,**
**aka KAREN MCNEW**

aided and abetted others including E.L.P. to knowingly make false statements and reports for the purpose of influencing in any way the action of the FCIC, and companies the FCIC reinsures, upon an application, advance, commitment, loan, and insurance agreement or application for insurance or a guarantee, in violation of Title 18, United States Code, Section 1014.

### FORFEITURE ALLEGATION
**18 U.S.C. § 982**
**18 U.S.C. § 981(a)(l)(C)**
**28 U.S.C. § 2461(c)**

In committing the felony offense alleged in this Indictment, punishable by imprisonment for more than one year, **KAREN ANN NICKELL, aka KAREN LANE, aka KAREN MCNEW,** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), § 981(a)(1)(C), and 28 U.S.C. § 2461(c), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of violations of 18 U.S.C. § 1014.

**SUBSTITUTE ASSETS:**

If any of the property listed above, as a result of any act or omission of the defendant,

    (1) cannot be located upon the exercise of due diligence
    (2) has been transferred or sold to, or deposited with, a third party;
    (3) has been placed beyond the jurisdiction of the Court;
    (4) has been substantially diminished in value; or
    (5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property in which the above defendant has an interest, up to the value of the judgment described above and pursuant to 21 U.S.C. § 853(p), as incorporated in 18 U.S.C. § 982(b)(1).

**A TRUE BILL**

*[signature]*

**ROBERT M. DUNCAN, JR.**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNT 1:** Not more than 30 years imprisonment, $1,000,000 fine or twice the gross gain or loss, and 5 years supervised release.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.